Melquades MONTANO and Ebelia Montano, Plaintiffs–Appellees,

v.

LAND TITLE GUARANTEE COMPANY and Title Insurance Company of Minnesota, Defendants and Third–Party Plaintiffs–Appellants,

v.

David P. SMITH, Third–Party Defendant–Appellee.

No. 88CA1063.

Colorado Court of Appeals, Div. IV.

July 27, 1989.

James C. Anesi, Durango, and Glen Wilkerson, Austin, Tex., for plaintiffs–appellees.

Loser, Davies, Magoon & Fitzgerald, P.C., Edward B. Towey, and Durham & Baron, Deborah A. Sperlak, Denver, for defendants and third-party plaintiffs-appellants.

No appearance for third-party defendant-appellee.

DUBOFSKY, Judge.

Defendants, Land Title Guarantee Co. and Title Insurance Co. of Minnesota, appeal from a trial court judgment holding them liable to Melquades and Ebelia Montano in damages for conversion of a deed to real property owned by the Montanos and also from a judgment in favor of third-party defendant, David Smith. We affirm the judgments.

The Montanos contracted to sell their Durango home to Rockwell Powers, with terms of $10,000 down and $32,000 later. Powers subsequently contracted with Ben Crue to exchange the Montanos' home and a note for a carwash business owned by Crue.

Powers and the Montanos were supposed to meet Crue's attorney, third-party defendant Smith, at the offices of Durango Land Title, an agent of defendants, on August 6, 1985. The record discloses that Smith wanted to protect his client's interests by closing the transaction between Crue and Powers because Crue was living in the home still owned by the Montanos and Powers was operating the carwash still owned by Crue.

Powers and the Montanos arrived at the Durango Land Title office prior to the time they were to meet Smith. At Powers' request, Kathy Chapman, a non-lawyer employee of Durango Land Title, prepared a warranty deed for the Montanos' property, naming the Montanos as grantors and Crue as grantee. The Montanos executed the deed and Chapman notarized it. The Montanos knew that the purpose of the document was to enable Crue to obtain a loan on the property. The Montanos and Powers left the executed deed with Chapman, but with no instructions as to what to do with it.

Smith arrived at the Durango Land Title office after the Montanos and Powers had departed. He initially told Chapman to keep the deed, but later that day indicated to her that she could record it. Chapman did so the following day. Shortly thereafter Crue executed a deed of trust on the property in favor of a bank. Subsequent to this, Powers' check to the Montanos for the full purchase price of the house, $32,000, was returned by the bank for insufficient funds, and Powers fled town.

The Montanos contend that defendants are liable to them for the $32,000 because: (1) defendants' agent, Chapman, unlawfully engaged in the practice of law by preparing the deed; and (2) Chapman was bailee of the warranty deed and, when she recorded the deed without authorization from the Montanos, she breached her duty to the Montanos to exercise reasonable care to protect their property.

Defendants deny liability but assert that, if they are liable to the Montanos, then Smith is liable to defendants because Smith wrongfully induced their agent, Chapman, to record the deed.

I.

Defendants first argue that the trial court's conclusion that Chapman was a

bailee of the deed was in error because no trust was placed in her. They further contend that, if a bailment was created, Powers, and not the Montanos, was the bailor and that, therefore, defendants owed no duty to the Montanos. We conclude, as did the trial court, that a bailment was created, and that, consequently, Chapman owed a duty to the Montanos to properly dispose of the deed.

[1] A constructive bailment may arise when a party engages another to perform some service with respect to his personal property and thereafter leaves that property without any instructions as to its disposition. See *Chesterfield Sewer & Water, Inc. v. Citizens Insurance Co.*, 57 Ill. App.2d 90, 207 N.E.2d 84 (1965); 8 Am. Jur.2d *Bailments* § 65 (1980); *Christensen v. Hoover*, 643 P.2d 525 (Colo.1982) (if a person comes into possession of another's personal property, constructive bailment may be created if justice so requires).

A bailee's obligation runs to the property bailed, and not solely to the bailor. *Christensen v. Hoover, supra.* When one holds title paramount to that of the bailor, the bailee's obligation runs to the paramount title holder as well. *Christensen v. Hoover*, 43 Colo.App. 501, 608 P.2d 372 (1979), *rev'd on other grounds, supra.*

Here, Powers instructed Chapman to prepare the deed, and, after the Montanos executed it, the deed was left with Chapman. This constituted a constructive bailment. See *Chesterfield Sewer & Water, Inc. v. Citizens Insurance Co., supra.* Furthermore, it is inconsequential whether the Montanos or Powers was the bailor of the deed, because Chapman owed a duty as bailee to the Montanos as paramount title holders to deliver the deed only to someone authorized by the Montanos to receive it. See *Wheelock Bros., Inc. v. Bankers Warehouse Co.*, 115 Colo. 197, 171 P.2d 405 (1946).

Defendants also argue that Chapman's recording of the deed was consistent with Powers' and the Montanos' expectations and implicit authorizations. Thus, they argue, there was no conversion of the deed. We disagree.

The wrongful disposition of personal property by a bailee constitutes a conversion. *Star Fruit Co. v. Eagle Lake Growers, Inc.*, 160 Fla. 130, 33 So.2d 858 (1948). *See also Presley v. Cooper*, 155 Tex. 168, 284 S.W.2d 138 (1955); 8 Am. Jur.2d *Bailments* § 122 (1980). Moreover, a conversion results where, as here, the trial court finds misdelivery of the bailed property is due to negligence. *Joseph H. Reinfeld, Inc. v. Griswold & Bateman Warehouse Co.*, 189 N.J.Super. 141, 458 A.2d 1341 (1983); Restatement (Second) of Torts § 234 comment a (1965).

The record demonstrates that neither Powers nor the Montanos expected Chapman to record the deed. To the contrary, she had no authorization, express or implied, from either of them to record the deed. Thus, the record supports the trial court's finding that Chapman was guilty of conversion for the recordation of the deed.

Because we determine that the defendants are liable to the Montanos on a bailment and conversion theory, we do not reach the issue of whether Chapman unlawfully engaged in the practice of law by preparing the deed.

## II.

In their third-party claim, defendants contend that the court erred in failing to determine that Smith is liable to them because of his actions in inducing Chapman to record the deed.

Defendants urge us to find Smith liable on a theory of negligent misrepresentation. However, we conclude that *Weigel v. Hardesty*, 37 Colo.App. 541, 549 P.2d 1335 (1976) is dispositive of the negligent misrepresentation claim. In *Weigel*, the court held that an attorney, while fulfilling his fiduciary duty to act in his client's best interest, is liable for injuries to third parties only when his conduct is fraudulent or malicious.

Some of the reasons stated for limiting the liability of attorneys to non-clients include: (1) the attorney's duty of loyalty and

effective advocacy for his client; (2) the nature of the adversarial relationship between an attorney and other parties; and (3) the potential liability to an unlimited number of third parties if attorney liability to third parties is extended. *See generally* Annot., 61 A.L.R. 4th 615 (1988).

Here, Smith was acting for his client, Crue, when he indicated to Chapman that she could record the deed, and the record supports the trial court's finding that this conduct was neither fraudulent nor malicious. *See Weigel v. Hardesty, supra; People in Interest of A.J.*, 757 P.2d 1165 (Colo.App.1988).

### III.

Defendants also argue that Chapman was acting as Smith's agent in recording the deed and, consequently, Smith as principal is liable for the actions of his agent. We disagree and conclude that Chapman was not acting as Smith's agent in recording the deed.

 Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act. *Stortroen v. Beneficial Finance Co.*, 736 P.2d 391 (Colo.1987). Here, there is evidence indicating that Chapman was subject to the control of her employer, Durango Land Title, but not subject to control by Smith. Therefore, the trial court properly rejected defendants' theory that Chapman acted as Smith's agent in recording the deed. *See Stortroen v. Beneficial Finance Co., supra; Daily International Sales Corp. v. Eastman Whipstock, Inc.*, 662 S.W.2d 60 (Tex.Ct.App.1983).

Judgments affirmed.

PLANK and REED, JJ., concur.